**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CIVIL ACTION**
**FOR THE USE AND BENEFIT OF**
**INDUSTRIAL ROOFING AND CONSTRUCTION,**
**LLC**

**VERSUS**                                      **CASE NO. 23-2119**

**WESTERN SURETY COMPANY et al.**               **SECTION: "G"(1)**

**ORDER AND REASONS**

Before the Court are Defendant Western Surety Company's ("Western Surety") Motion to

Dismiss Pursuant to Rule 12(b)(3)[1] and Defendant Pontchartrain Partners, LLC's

("Pontchartrain") Motion to Dismiss Pursuant to Rule 12(b)(3).[2]  In this litigation, Plaintiff

Industrial Roofing and Construction, LLC ("Industrial") seeks to recover payments for work it

performed but which Western Surety and Pontchartrain allegedly did not tender.[3] Western Surety

and Pontchartrain move to dismiss Industrial's claims under Rule 12(b)(3) because of a  mediation

and arbitration clause in the Subcontract between Industrial and Pontchartrain.[4] Industrial opposes,

contending that the Subcontract does not apply to its Miller Act claims against Western Surety.[5]

Having considered the motions, the memoranda in support and in opposition, the record, and the

applicable law, the Court grants the motions to the extent that they request that the Court compel

---

[1] Rec. Doc. 12.

[2] Rec. Doc. 13.

[3] Rec. Doc. 4.

[4] Rec. Docs. 12, 13.

[5] Rec. Doc. 14.

1

arbitration of Industrial's claims against Pontchartrain. The Court denies the motions to the extent that they request that the case be dismissed and instead stays the case pending arbitration.

## I. Background

On June 20, 2023 Industrial filed a Complaint against Defendant Western Surety in this Court.[6] On July 14, 2023, Industrial filed an Amended Complaint, adding Pontchartrain as a Defendant.[7] Industrial seeks to recover damages for work it allegedly performed but was not paid for as a subcontractor on a federal construction project ("Project") in New Orleans, Louisiana.[8] Industrial alleges that as part of Pontchartrain's obligations as a general contractor under the Miller Act, Pontchartrain obtained a payment bond issued by Western Surety.[9]

Industrial alleges that on or around November 20, 2020, it entered into a $12,986,320 subcontract ("Subcontract") with Pontchartrain.[10] Industrial alleges that Pontchartrain "routinely breached this Subcontract by failing to render payment to Industrial in a timely manner" and that eventually "Pontchartrain stopped paying Industrial" in December 2022.[11] Industrial further alleges that Pontchartrain last tendered payment on May 19, 2023 and that Pontchartrain owes it $1,119,470.90.[12] Industrial brings a Miller Act claim against Pontchartrain and Western Surety.[13]

---

[6] Rec. Doc. 1.

[7] Rec. Doc. 4.

[8] *Id.* at 1, 4–5.

[9] *Id.* at 1.

[10] *Id.* at 2.

[11] *Id.* at 3.

[12] *Id.* at 4.

[13] *Id.* at 5.

Industrial also brings a breach of contract claim, a Louisiana Prompt Pay Act claim, an unjust enrichment claim, and a quantum meruit claim against Pontchartrain.[14]

Industrial pleads that jurisdiction and venue are proper in this Court pursuant to 40 U.S.C. § 3131(b)(3) for the Miller Act claims and that the Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).[15] Industrial also alleges that the Court has jurisdiction over this dispute despite a mediation and arbitration clause in the Subcontract because Pontchartrain has waved its rights to those alternative dispute mechanisms by refusing to "engage in mediation in a timely manner. . . ."[16]

The Subcontract between Pontchartrain and Industrial contains a mediation and arbitration clause, providing in part that "any dispute of any type or nature whatsoever between Subcontractor and Contractor (past, present or future) . . . shall first be submitted to mediation, and, if not settled at mediation, to binding arbitration pursuant to the Federal Arbitration Act. . . ."[17] "Mediation shall be conducted before a mediator jointly selected by both Contractor and Subcontractor" and if "the parties cannot agree on a mediator, then the mediator shall be selected by the American Arbitration Association ("AAA") . . . ."[18] Similarly, "[t]he parties shall agree on a single arbitrator and, in the event they cannot agree on an arbitrator, a court of competent jurisdiction shall appoint one."[19] The mediation and arbitration clause further provides that "[d]etermination of the arbitrability of

---

[14] *Id.* at 5–9.

[15] *Id.* at 2.

[16] *Id.*

[17] Rec. Doc. 4-2 at 18.

[18] *Id.*

[19] *Id.* at 18–19.

any dispute shall be made by the arbitrator. . . ."[20] The mediation and arbitration provision also contains limiting language that "[t]his Article shall not be deemed a limitation of rights or remedies which the Subcontractor may have under Federal law, or under . . . applicable labor or material payment bonds, unless such rights or remedies are expressly waived by the Subcontractor and its surety."[21]

On September 12, 2023, Western Surety filed a motion to dismiss pursuant to Rule 12(b)(3) because of the mediation and arbitration clause in the Subcontract.[22] On September 22, 2023, Pontchartrain filed a motion to dismiss pursuant to Rule 12(b)(3) and also joined Western Surety's motion.[23] On September 26, 2023, Industrial filed a response opposing Western Surety and Pontchartrains's motions.[24] On October 11, 2023, Western Surety filed a reply to Plaintiff's response.[25] On October 17, 2023, Pontchartrain filed a reply to Plaintiff's response.[26]

## II. Parties' Arguments

### A.   *Western Surety and Pontchartrains's Arguments in Support of the Motions*

Western Surety argues that Industrial's Amended Complaint should be dismissed because the Subcontract between Pontchartrain and Industrial contains a mediation and arbitration clause.[27] Western Surety contends that it may invoke this mediation and arbitration clause because

---

[20] *Id.* at 18.

[21] *Id.* at 19.

[22] Rec. Doc. 12.

[23] Rec. Doc. 13.

[24] Rec. Doc. 14.

[25] Rec. Doc. 18.

[26] Rec. Doc. 21.

[27] Rec. Doc. 12.

Louisiana law allows them to do so as the surety of Pontchartrain.[28] Western Surety notes that the Federal Arbitration Act strongly favors arbitration.[29] Western Surety also notes that the Supreme Court has held a presumption of arbitrability exists when there is a contract containing an arbitration clause.[30] Western Surety also argues that contrary to Industrial's allegations, Western Surety has not waived its mediation and arbitration rights.[31] Western Surety notes that the Subcontract requires the American Arbitration Association to select a mediator if the parties cannot agree on a mediator, but Industrial has not followed this process for obtaining a mediator.[32]

In its motion to dismiss under Rule 12(b)(3), Pontchartrain adapts and incorporates the arguments Western Surety made in its motion.[33]

## B.    *Industrial's Response Opposing the Motion*

In its response opposing the motions, Industrial argues that its claims against Pontchartrain are bound by the mediation and arbitration clause in the Subcontract, but that Pontchartrain has waived mediation and arbitration through its inaction.[34] In addition, Industrial argues that its Miller Act claim against Western Surety is not bound by the Subcontract and should not be dismissed.[35]

---

[28] Rec. Doc. 12 at 1 (citing La. Civ. Code art. 3046) ("The surety may assert against the creditor any defense to the principal obligation that the principal obligor could assert except lack of capacity or discharge in bankruptcy of the principal obligor.").

[29] Rec. Doc. 12-1 at 2 (citing 9 U.S.C. § 1, *et seq.*).

[30] *Id.* (citing *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986); *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 (1983)).

[31] *Id.* at 3.

[32] *Id.*

[33] Rec. Doc. 13-1.

[34] Rec. Doc. 14 at 1, 4.

[35] *Id.* at 1 (citing *United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1011–12 (5th Cir. 1976)).

First, Industrial reasons that if it is not allowed to bring its Miller Act claims against Western Surety before mediation and arbitration with Pontchartrain has been completed, then it would be unlikely to bring these claims by the time the one year statute of limitations from "the day on which the last of the labor was performed" runs out under the Miller Act.[36] Industrial points to the Fifth Circuit's decision in *Weiss* in support of its contention that "a subcontractor may file suit against a surety in advance of a final determination in the dispute with the general contractor."[37] Industrial notes that participation in mediation and arbitration does not toll the one year statute of limitations.[38]

Second, Industrial points to *United States v. Citi Approved Enterprise, LLC*, where a judge in the Western District of Louisiana applied *Weiss* and held that absent express intent, courts will not apply an arbitration provision to a non-party to the contract.[39] Industrial contends that Pontchartrain and Industrial did not expressly intend for the mediation and arbitration clause to apply to Western Surety as a non-party to the Subcontract.[40] Industrial further contends that, to the contrary, the Subcontract provides that the dispute resolution provision "shall not be deemed a limitation of rights or remedies which [Industrial] may have under Federal law, or under state mechanics' lien laws under applicable labor or material payment bonds, unless such rights or remedies are expressly waived by [Industrial] and its surety."[41]

---

[36] *Id.* at 2 (citing 40 U.S.C. § 3133(b)(4)).

[37] *Id.* (citing *Weiss*, 532 F.2d at 1012–13)

[38] *Id.* (citing *Weiss*, 532 F.2d at 1012–13).

[39] *Id.* at 3 (citing *United States v. Citi Approved Enter. LLC*, No. 21-386, 2021 WL 4076579, at *2, (W.D. La. Aug. 10, 2021) (Hanna, M.J.), *report and recommendation adopted*, 2021 WL 4070929, at *1 (W.D. La. Sept. 7, 2021) (Summerhays, J.)).

[40] *Id.*

[41] *Id.* at 3–4 (citing Rec. Doc. 4-2 at 19).

Third, Industrial reasons that Pontchartrain has waived its right to mediation and arbitration because of its inaction in engaging with Industrial to select a mediator and arrange a mediation date.[42] Industrial contends that as of the date of its filing of this response, Pontchartrain has not followed through with the selection of a mediator.[43]

### C.    *Western Surety's Reply*

In its reply, Western Surety argues in the alternative that this matter should be stayed pending the outcome of mediation and arbitration.[44] Western Surety notes that *Weiss* and *Citi*, which Plaintiff cites, stayed at least the Miller Act claims while the other claims bound by an arbitration clause were sent to arbitration.[45] Western Surety also argues that it has not waived mediation and arbitration because Industrial sent Pontchartrain a letter initiating mediation on June 14, 2023, but filed the complaint in this matter six days later on June 20, 2023.[46]

### D.    *Pontchartrain's Reply*

In its reply, Pontchartrain first argues that it has not waived its rights to mediate and arbitrate in the Subcontract because Industrial "has failed to establish that it would be prejudiced by mediation or arbitration of this matter. . . ."[47] Pontchartrain notes that the Fifth Circuit has held that "[a] party waives its right to arbitration only when participation in the litigation has been so substantial that compelling arbitration would prejudice the other party."[48] Pontchartrain reasons

---

[42] *Id.* at 4.

[43] *Id.*

[44] Rec. Doc. 18 at 2.

[45] *Id.* at 1 (citing *Weiss*, 532 F.3d at 1013; *Citi*, 2021 WL 4070929, at *1).

[46] *Id.* at 2.

[47] Rec. Doc. 21 at 1.

[48] *Id.* (citing *Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695, 700 (5th Cir. 2003)).

that Industrial has not been prejudiced because Industrial did not attempt mediation until seven months after it stopped receiving payment from Pontchartrain in November 2022.[49] Second, Pontchartrain argues that this issue of whether arbitration has been waived is to be decided by an arbitrator because the Subcontract provides that the arbitrability of a dispute shall be determined by the arbitrator and that the Supreme Court has upheld these clauses requiring an arbitrator to determine the arbitrability of a dispute.[50]

### III. Legal Standard

#### A.    *Rule 12(b)(3) Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(3), claims may be dismissed for improper venue.[51] The Supreme Court has held that "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."[52] The Fifth Circuit has held that Rule 12(b)(3) is a proper method for seeking dismissal in favor of arbitration.[53] Thus, the enforceability of an arbitration agreement may be analyzed under Rule 12(b)(3).

Although the Fifth circuit has not decided which party bears the burden on a Rule 12(b)(3) motion, "most district courts within the Fifth Circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum."[54]

---

[49] *Id.* at 2.

[50] *Id* (citing *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24–25).

[51] *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 54–55 (2013).

[52] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

[53] *Gezu v. Charter Commc'ns.,* 17 F.4th 547, 554 n.7 (5th Cir. 2021); *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).

[54] *Galderma Laboratories, L.P. v. Teva Pharms.*, 290 F.Supp.3d 599, 605 (N.D. Tex. 2017) (citing *Broadway Nat'l Bank v. Plano Encryption Techns., LLC*, 173 F.Supp.3d 469, 473 n.2 (W.D. Tex. 2016); *Graham v. Dynorp Intern., Inc.* 973 F.Supp.2d 698, 700 (S.D. Tex. 2013); *Asevedo v. NBC Universal Media, LLC*, 921 F.Supp.2d 573, 589 (E.D. La. 2013); *Praetorian Specialty Ins. Co. v. Aguillard Const. Co., Inc.*, 829 F.Supp.2d 456, 470 (W.D. La.

When deciding a Rule 12(b)(3) motion, the Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff.[55] The Court may consider evidence in the record beyond the facts alleged in the complaint and its proper attachments.[56]

## IV. Analysis

Western Surety and Pontchartrain assert that Industrial's claims should be dismissed pursuant to Rule 12(b)(3) because they are subject to mediation and arbitration.[57] Western Surety argues in the alternative that this matter should be stayed pending the outcome of mediation and arbitration.[58] Industrial argues that Pontchartrain has waived mediation and arbitration by failing to engage in those processes and that its Miller Act claim against Western Surety is not bound by the arbitration clause.[59]

The Federal Arbitration Act ("FAA") was enacted in 1924 to "allow[] a party to . . . an arbitration agreement to petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement."[60] In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[61] The Fifth

---

2010); *EnviroGLAS Products, Inc. v. EnviroGLAS Products, LLC*, 705 F.Supp.2d 560, 566 (N.D. Tex. 2010); *AETN Intern. Co. Ltd v. Emine Techn. Co., Ltd.*, 261 F.R.D. 112, 120 (E.D. Tex. 2009)).

[55] *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (per curiam).

[56] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (citations and internal quotations omitted)).

[57] Rec. Docs. 12, 13, 18, 21.

[58] Rec. Doc. 18.

[59] Rec. Doc. 14.

[60] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (internal quotation marks omitted).

[61] *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004).

Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[62] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[63]

There is a strong presumption in favor of arbitrability.[64] Any doubts about the arbitrability of a dispute should be resolved in favor of arbitration.[65] To overcome this presumption, there must be clear evidence that the parties did not intend the claim to be arbitrable.[66] The Fifth Circuit has established a two-step inquiry to determine if an arbitration clause is enforceable.[67] First, a court determines whether the parties agreed to arbitrate.[68] This involves determining both whether there was a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration clause.[69] Second, a court determines whether any legal constraints external to the agreement foreclose the arbitration of claims.[70] "The duty to arbitrate is one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit to arbitration."[71]

Although there is strong language in the case law regarding the presumption in favor of arbitrability, the Fifth Circuit has held that "the right to arbitration, like any contractual right, may

---

[62] *Id.*

[63] *Id.*

[64] *See E.E.O. C. v. Waffle House*, 534 U.S. 279, 289 (2002).

[65] *See Moses H. Cone Mem'l Hosp*, 460 U.S. at 24–25.

[66] *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

[67] *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Tuttle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006).

be waived."[72] The Fifth Circuit has further held that a party will be found to have waived the right to arbitration when the party seeking arbitration "substantially invokes the judicial process to the detriment or prejudice of the other party."[73] "The question of whether the movant's participation in the litigation has been substantial enough to constitute waiver is fairly strict: waiver of an arbitration right will not be lightly inferred without some showing of prejudice."[74]

## A.   *Industrial's Claims Against Pontchartrain*

Industrial's claims against Pontchartrain are subject to arbitration because the arbitration clause in the Subcontract is enforceable and this litigation is within the scope of the arbitration clause. First, the arbitration clause is enforceable and has not been waived. Although Industrial argues that Pontchartrain has waived arbitration by failing to engage them in the mediation and arbitration process outlined in the subcontract, Pontchartrain has not "substantially invoke[d] the judicial process to the detriment or prejudice of" Industrial.[75] Aside from filing the instant motion to dismiss, Pontchartrain has not utilized the judicial process instead of the mediation and arbitration process. Filing this motion to dismiss does not prejudice Industrial, as Pontchartrain only seeks to enforce the arbitration clause in the Subcontract.

Industrial notes that Pontchartrain still has not provided the names of mediators after Industrial sent its demand letter on June 14, 2023.[76] However, the Subcontract requires the AAA to appoint a mediator if the parties cannot agree on a mediator and Industrial has not indicated that

---

[72] *Price v. Drexel Burnham Labert Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986).

[73] *Id.*

[74] *Cargill*, 325 F.3d at 700 (internal quotations and citation omitted).

[75] *Price*, 791 F.2d at 1158.

[76] Rec. Doc. 14-2 at 2.

it has communicated with the AAA to do so.[77] Therefore, the arbitration clause has not been waived. Second, Industrial's claims against Pontchartrain fall within the scope of the arbitration agreement, as Industrial's claims against Pontchartrain arise out of the construction work the parties contracted to.[78] Because there is an enforceable arbitration clause that applies to Industrial's claims against Pontchartrain, Industrial's claims against Pontchartrain are subject to arbitration.

The Court must next determine whether to dismiss or stay Industrial's claims against Pontchartrain pending arbitration. According to Pontchartrain, all of Industrial's claims should be referred to arbitration and the case should be dismissed.[79] Plaintiff argues that a stay, not dismissal, is appropriate pending arbitration.[80]

Section 3 of the FAA provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete.[81] In *Alford v. Dean Witter Reynolds, Inc.*, the Fifth Circuit stated that

---

[77] Rec. Doc. 4-2 at 18.

[78] *See U.S. for Use and Benefit of EWS Tex., Inc. v. Robins & Morton Grp.*, No. 23-cv-288, 2023 WL 6350362, at *2 (M.D. Al. Sept. 28, 2023) (rejecting subcontractor's arguments that the Miller Act prohibited the arbitration of claims between the subcontractor and the principal contractor because "courts have overwhelmingly concluded that Section 3133(c) of the Miller Act does not prohibit enforcement of an arbitration agreement executed before the subcontractor has furnished labor or material for use in the performance of the contract" and granting the principal contractor's motion to compel arbitration of all claims against it, including the subcontractor's Miller Act claims) (citations omitted); *U.S. for Use and Benefit of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705, 708 (2d. Cir. 1966) ("the United States Arbitration Act … quite clearly is broad enough to include Miller Act suits within its scope …"); *Electronic & Missile Facilities, Inc. v. U.S. for Use of Moseley*, 306 F.2d 554, 556–57 (5th Cir. 1962) ("First, there is absolutely nothing in the language or legislative history of the Miller Act which indicates that Congress meant to prohibit a laborer or materialman from voluntarily substituting the procedure of arbitration for his right to litigate in a federal court. On the other hand, the United States Arbitration Act expressly and unequivocally gave the parties the right to provide for the arbitration of all disputes arising under their contracts.") (*rev'd* on other grounds *sub nom. Moseley v. Electronic & Missile Facilities Inc.*, 374 U.S. 167, 171–72 (1963) (holding that the Court does not reach the issue of arbitrability because the issue of fraud needed to be reached before arbitrability.).

[79] Rec. Doc. 17-1 at 17.

[80] Rec. Doc. 19 at 9.

[81] 9 U.S.C. § 3.

"[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."[82] In later cases, however, the Fifth Circuit clarified the language in the *Alford* opinion. Indeed, in *Apache Bohai Corp. LDC v. Texaco China, B.V.*, the Fifth Circuit stated that "*Alford* held merely that dismissal was not an abuse of discretion" and, moreover, *Alford* "did not hold that dismissal was required" when all of a party's claims are subject to arbitration.[83] Instead, the district courts also have discretion to stay the case.[84] As discussed in more detail below, Industrial's claims against Western Surety are not subject to arbitration. Therefore, the Court exercises its discretion and stay Industrial's claims against Pontchartrain pending arbitration.

## B.   *Industrial's Claims Against Western Surety*

The Miller Act imposes certain obligations on the general contractor on any "contract of more than $100,000 . . . for the construction, alteration, or repair of any public building or public work of the Federal Government. . . ."[85] The Miller Act accords a subcontractor the right to file suit in federal court against a surety issuing a bond to a general contractor on a federal construction project for recovery of payments owed by the general contractor.[86] Although a subcontractor may waive these rights by contract, the subcontractor's intent to do so must be express, written, signed by the subcontractor, and executed after the subcontractor has furnished labor or material for use

---

[82] 975 F.2d 1161, 1164 (5th Cir. 1992).

[83] 330 F.3d 307, 311 n.9 (5th Cir. 2003).

[84] *Id.*; *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (stating that "district courts have discretion to dismiss cases in favor of arbitration," but not implying any obligation to do so).

[85] 40 U.S.C. § 3131(b).

[86] *Id.* at § 3133.

in the performance of the subcontract.[87]

In *Weiss*, the Fifth Circuit considered whether a subcontractor's Miller Act claims against a surety are bound by the arbitration clause in the subcontract between the subcontractor and the principal contractor.[88] The subcontract between the subcontractor, Portland, and the general contractor, Weiss, contained an arbitration clause requiring "any controversy or claim arising out of, or related to any provision of [the] subcontract" to be settled by arbitration.[89] Portland then sought to compel arbitration of its state law claims against Weiss and also brought Miller Act claims against the surety, Argonaut, in federal court.[90] Weiss and Argonaut sought dismissal of Portland's Miller Act suit, contending that Portland had waived its right to pursue the Miller Act claims because Portland sought arbitration of the state law claims.[91] The district court dismissed Portland's Miller Act suit, but the Fifth Circuit reversed, finding that "[b]y demanding arbitration in Michigan, Portland did not waive its right to pursue its Miller Act remedy."[92] The Fifth Circuit further reasoned that because "Argonaut, the surety, was not a party to the subcontract that provided for arbitration and could not be joined as a party in the arbitration proceedings … Portland may avail itself of its Miller Act remedy against Argonaut only by way of a Miller Act suit in federal court."[93] The Fifth Circuit concluded that "to find a waiver in these circumstances would

---

[87] *Id.* at § 3133(c) ("A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is – (1) in writing; (2) signed by the person whose right is waived; and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract."); *JS&H Const. Co. v. Richmond Cnty. Hosp. Auth.*, 473 F.2d 212, 216 (5th Cir. 1973) (citation omitted).

[88] *Weiss*, 532 F.2d at 1010–11.

[89] *Id.* at 1010.

[90] *Id.* at 1010–11.

[91] *Id.* at 1011.

[92] *Id.* at 1012.

[93] *Id.* (citation omitted).

totally deprive Portland of the cause of action conferred by the terms of the Miller Act."[94]

Just as the Fifth Circuit in *Weiss* recognized that "the surety[] was not a party to the subcontract that provided for arbitration and could not be joined as a party in the arbitration proceedings," Western Surety was not a signatory to the subcontract between Industrial and Pontchartrain that contained the mediation and arbitration clause. There is otherwise no other indication Industrial waived its right to bring a Miller Act claim against Western Surety in federal court, as there is no express written waiver of this right. The Subcontract between Industrial and Pontchartrain contains limiting language that preserves Industrial's rights under federal law relating to labor or material payment bonds and requires these rights to be "expressly waived by [Industrial] and its surety."[95] The Fifth Circuit in *Weiss* recognized that a dismissal of the Miller Act claim against the surety "would not only be inimical to the underlying purpose of the Miller Act, it would hinder parties from arbitrating their disputes."[96] Following *Weiss*, the Court will stay Industrial's Miller Act claims against Western Surety pending the arbitration of Industrial's state law claims against Pontchartrain.[97]

---

[94] *Id.*

[95] *Id.* at 19.

[96] *Weiss*, 532 F.3d at 1013. Although Western Surety cites to La. Civ. Code art. 3046 for the proposition that a surety can stand in the place of the principal and assert the same defenses, this Louisiana statute is not specific to Miller Act claims and as the Fifth Circuit in Weiss and other courts have recognized "suits against Miller Act sureties must be adjudicated in federal court." *U.S. for the Use and Benefit of Capital Elec. Const. Co., Inc. v. Pool and Canfield, Inc.*, 778 F.Supp. 1099, 1091 (W.D. Mo. 1991) (citing *Weiss*, 532 F.3d at 1012 ("Argonaut, the surety, was not a party to the subcontract that provided for arbitration and could not be joined as a party in the arbitration proceedings. Portland may avail itself of its Miller Act remedy against Argonaut only by way of a Miller Act suit in federal court")). Nor has Western Surety cited a case applying art. 3046 to a Miller Act case where the surety seeks to dismiss Miller Act claims based on an arbitration clause in the subcontract.

[97] *Id.* Courts have stayed the Miller Act claim against the surety when the general contractor or surety brings a motion to dismiss based on an arbitration provision in the subcontract between the general contractor and the subcontractor. *See Citi*, 2021 WL 4070929, at *1 (staying Miller Act claims against surety but compelling arbitration of the claims against the general contractor after general contractor filed motion to compel arbitration, or alternatively to dismiss or stay); *U.S. ex. rel. Peake Const., L.L.C. v. Crown Roofing Servs., Inc.*, No. 9-6619, 2010 WL 1416673, at * 1 (E.D. La. Mar. 31, 2010) (Lemmon, J.) (compelling arbitration of the subcontractor's state law claims against the general contractor but staying the Miller Act claim against the surety, rather than dismissing the claims "because

# V. Conclusion

For the reasons discussed above, Industrial's claims against Pontchartrain are subject to arbitration. Therefore, the Court will stay this litigation pending arbitration.

Accordingly,

---

Peake's Miller Act claim against Hartford is not referable to arbitration") (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.")); *United States for Use of Top Flight Steel, Inc. v. Enter. Precast Concrete of Texas, LLC et al.*, No. 22-142, 2023 WL 4553629, at *1 (E.D. Tex. June 15, 2023) (Baxter, M.J.) (denying motion to compel arbitration of Miller Act claims and staying the Miller Act claims pending the arbitration of the non-Miller Act claims), *report and recommendation adopted*, 2023 WL 4552286, at *1 (E.D. Tex. July 14, 2023) (Shroeder III, J.)).

**IT IS HEREBY ORDERED** that Western Surety's Motion to Dismiss Pursuant to Rule 12(b)(3)[98] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED IN PART** to the extent Western Surety moves the Court to stay this litigation pending arbitration. The Motion is **DENIED IN PART** to the extent Western Surety moves this Court to compel arbitration of the claims pending against it or to dismiss the claims against it.

**IT IS FURTHER ORDERED** that Pontchartrain's Motion to Dismiss Pursuant to Rule 12(b)(3)[99] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED IN PART** to the extent Pontchartrain moves the Court to compel arbitration. The Motion is **DENIED IN PART** to the extent Pontchartrain moves this Court to dismiss Industrial's claims against it.

**IT IS FURTHER ORDERED** that the above-captioned matter is **STAYED** and **ADMINISTRATIVELY CLOSED** to be reopened upon motion of a party at the conclusion of the arbitration proceedings.

**NEW ORLEANS, LOUISIANA**, this __1st__ day of December, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[98] Rec. Doc. 12.

[99] Rec. Doc. 13.